IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANTONIO PEDZICH, #316084     * | |
|         Petitioner, | |
| v.     * | CIVIL ACTION NO. RWT-06-2429 |
| GARY HORNBAKER, WARDEN     * | |
|         Respondent. | |
|                                *** | |

## **MEMORANDUM OPINION**

According to the facts set out in this 28 U.S.C. § 2241 Petition for writ of habeas corpus, Petitioner, who is currently confined at the Metropolitan Transitional Center ("MTC") in Baltimore, Maryland, was arrested and charged with misdemeanor driving offenses occurring on August 28, 2003. He states that while the motor vehicle charges were nolle prossed, his arrest resulted in the violation of his probation and the imposition of a seven-year sentence imposed on September 3, 2003.

Petitioner challenges his continued detention, alleging that on November 19, 2003, the Department of Homeland Security ("DHS") issued a detainer to the Warden at MTC pursuant to 8 C.F.R. § 287.7(a). In pertinent part, § 287.7(a) provides,

> A detainer serves to advise another law enforcement agency that the Service seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Service, prior to release of the alien, in order for the Service to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.[1]

---

[1] As of March 1, 2003, the Immigration and Naturalization Service ("Service") ceased to exist and its functions were transferred to the Department of Homeland Security. The former Service's enforcement, detention, and removal functions are within the responsibility of the DHS. For the sake of convenience, the Court will refer to the Service as the DHS in this Opinion.

The MTC Warden was notified that Petitioner is an citizen of Poland and that an investigation had been initiated to determine whether Petitioner (alien) was subject to removal from the United States. (Paper No. 1 at Attachment). In addition, the detainer indicated that Petitioner was to be detained by the Warden for a period not to exceed 48 hours to provide adequate time for immigration authorities to assume custody. (<u>Id</u>.). The Warden was to notify immigration authorities of Petitioner's release at least 30 days prior to his release or as far in advance as possible.[2] (<u>Id</u>.). Petitioner claims that DHS has violated due process and the Interstate Agreement on Detainers by failing to execute the detainer after he has made two requests for their dispositions in January and May of 2005. (Paper No. 1).

The Petition shall be summarily dismissed. First, Petitioner fails to allege any facts suggesting that the lodging of an DHS detainer based upon his alienage deprives him of due process. He does not deny his alien status. Further, the Interstate Agreement on Detainers, 18 U.S.C. App. 2, is not implicated by an immigration detainer. <u>See</u> <u>United States v. Gonzalez-Mendoza</u>, 985 F.2d 1014, 1016 (9th Cir. 1983).

Moreover, Petitioner has no entitlement to an immediate determination of the removal issue by immigration officials. He continues to serve his seven-year violation of probation sentence imposed in September of 2003. Petitioner's continued confinement until the completion of his term of incarceration does not violate the Constitution or laws of the United States, and Petitioner has no private right of action to compel his immediate removal or immediate consideration for

---

[2] The detainer further states that the Warden should "Please accept this notice as a detainer. This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work, and quarters assignments, or other treatment which he or she would otherwise receive." (Paper No. 1 at Attachment).

removal prior to the completion of his term of incarceration.[3]  See Escobar v. U.S. Dept. of Justice, 2005 WL 1060635 (E.D. Pa. May 5, 2005) (no cause of action to compel resolution of INS detainer).

Finally, to the extent that Petitioner is alleging that the detainer has caused him a constitutional deprivation due to limitations imposed on his prison activities at MTC, the undersigned finds the claim unavailing.  A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or enacted law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983).  With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995).

It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement. See, e.g., Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.  State governments may confer on prisoners liberty interests that are protected by the Due Process Clause, "but these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of

---

[3] There is no existing private right of action for immediate removal See, e.g., United States v. Marin-Castaneda, 134 F.3d 551, 556 (3d Cir. 1998); Thye v. United States, 109 F.3d 127, 128-29 (2d Cir. 1997); Koos v. Holm, 204 F.Supp.2d 1099, 1108-09 (W.D. Tenn. 2002).

administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). Petitioner does not allege either that a statute confers a liberty interest in being free from the constraints imposed against prisoners subject to an immigration detainer or that the conditions under which he is confined present "atypical and significant hardships." Thus, Petitioner cannot establish a deprivation of his liberty interests under the Due Process Clause.

    For the aforementioned reasons, the Petition shall be dismissed. A separate Order shall be entered following the reasoning of this Memorandum Opinion.

Date:   9/27/06                            /s/
                                            ROGER W. TITUS
                                    UNITED STATES DISTRICT JUDGE